# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| RONALD ALLEN, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:17-cv-00897 |
| | ) CHIEF JUDGE CRENSHAW |
| QUEST DIAGNOSTICS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM

After working for Nissan for 31 years, Plaintiff Ronald Allen ("Allen") was fired, allegedly because a drug test revealed the presence of cocaine in his system. He then filed a Complaint for negligence and defamation in the Rutherford County Chancery Court against Defendant Quest Diagnostics, Inc. ("Quest"), the company that did the drug testing.

Upon removal of the action to this Court on diversity ground, Quest filed a Motion to Dismiss (Doc. No. 9), which Allen opposes (Doc. No. 12). The Motion will be granted only to the extent that the Complaint can be read as pleading a negligent supervision claim.

## I. Factual Background

The factual allegations taken from the Complaint, and accepted as true on a Motion to Dismiss, Ohio v. United States, 849 F.3d 313, 318 (6th Cir. 2017), are these:

On November 2, 2016, Nissan directed Allen to submit to a drug screen so that he could renew his tow motor license. Pursuant to that directive, he reported to Nissan's on-site medical station and provided hair and urine samples.

The hair sample was tested by Quest; the urine sample by Aegis Sciences Corporation

1

("Aegis"). The hair sample tested positive for cocaine; the urine sample did not.

On November 10, 2016, Allen was told about the positive result for the hair sample, and he was terminated that same day. Knowing that he had not ingested cocaine, Allen went to Quest and asked for a retest, but was told that any retest had to be approved by Nissan. When Nissan refused permission, Allen went to Any Lab Testing on November 12, 2016 for an independent hair sample drug test. The result of that test, which Allen claims to have covered a three-month period, showed him to be drug free.

In pertinent part, Allen's negligence claim reads:

> 20. Quest has, and had at all times relevant hereto, a duty of reasonable care to employees of Nissan for whom it and/or Quest employees administer drug testing.
>
> 21. Quest's duties include, but are not necessarily limited to, the duty to use reasonable care in training its office staff, implementing and following proper procedures in order to ensure the accuracy of drug test that it knew or should have know would be used by its client Nissan to make employment decisions that profoundly impact the lives of the individuals subjected to such tests.
>
> 22. Quest breached its duties to plaintiff by failing to properly train its office staff, implement or follow proper procedures that would have ensured the accuracy of the drug test that its office administered to plaintiff.
>
> 23. Quest's negligent acts were a proximate cause of the injuries and damages suffered by plaintiff.

(Doc. No. 1-3, Complaint ¶¶ 20-23). His defamation claim reads:

> 25. On or about November 10, 2016, Quest publicized a drug screen report that plaintiff tested positive for cocaine to plaintiff's employer, Nissan.
>
> 26. The drug screen report that plaintiff tested positive for cocaine was false.
>
> 27. The drug screen report is false as it pertains to plaintiff is libelous on its face. It clearly was injurious to plaintiff's character and reputation, and it was [sic] exposed plaintiff to public hatred, contempt, or ridicule.
>
> 28. The drug screen report was seen and read on or about November 10, 2016 by

2

> Nissan employees.
>
> 29. Nissan terminated plaintiff from his longstanding employment with Nissan based on the false drug screen report.
>
> 30. As a proximate result of the above-described false drug screen report, plaintiff has suffered economic loss, loss of his reputation, shame, and injury to his feelings.

(Id. ¶¶ 25-30).

## II. Application of Law

Quest moves to dismiss both of Allen's claims, as well as his request for punitive damages. The Court considers the arguments in the order presented.

### A. Negligence

Focusing on the allegations that Quest owed Allen and other Nissan employees a duty "to use reasonable care in training its office staff," and that Quest breached its duty by failing to "properly train its office staff," Quest moves to dismiss what it characterizes as Allen's "negligent supervision/training claim[.]" (Doc. No. 10 at 4). Insofar as Allen's claim can be read as one for negligent supervision or training, Quest is undoubtedly correct because "'[a] plaintiff in Tennessee may recover'" for negligent hiring, supervision, retention, or training only if "'the employer had knowledge of the employee's unfitness for the job.'" Prime Health Servs., Inc. v. Capital Bank, N.A., No. 3:16-CV-00034, 2017 WL 1064360, at *2 (M.D. Tenn. Mar. 21, 2017) (quoting Warren v. Warrior Gold Capital, LLC, 126 F. Supp. 3d 988, 998 (E.D. Tenn. 2015)). Even in the context of a Motion to dismiss, this "[c]learly . . . requires the plaintiff to identify the employee and explain what the employee did that negligently injured the plaintiff," Thompson v. Bank of Am., N.A., 773 F.3d 741, 755 (6th Cir. 2014), something which Allen has not done in his Complaint. See Gilliard v. JP Morgan Chase Bank, N.A., 2012 WL 6139922, at *6 (E.D. Tenn. Dec. 11, 2012) (complaint

3

does not state a claim for negligent supervision when "it fails to identify any employee of any defendant, who took any intentional action outside the scope of the employee's employment that caused a specific harm to plaintiffs").

The same allegations, however, can just as plausibly be read as setting forth plain vanilla negligence, the elements of which are "(1) a duty of care owed by the plaintiff to the defendant, (2) conduct by the defendant that breaches this duty, (3) an injury or loss, (4) a cause-in-fact connection between the plaintiff's injury or loss and the defendant's conduct, and (5) the existence of proximate or legal cause. Eskin v. Bartee, 262 S.W.3d 727, 735 n.19 (Tenn. 2008) (citing Draper v. Westerfield, 181 S.W.3d 283, 290 (Tenn.2005)). Allen does more than provide a "formulaic recitation of the elements," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007), and his negligence "claim has facial plausibility" because the Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). More specifically, and when the factual allegations are construed in his favor, Allen alleges Quest had a duty to use reasonable care by virtue of its relationship with Nissan in conducting drug screens, Quest breached this duty by wrongly reporting Allen had cocaine in his hair sample (because Quest employees were improperly trained, failed to follow proper procedure or for some other reason); and this breach of duty caused Allen injury in the form of a job loss. See Webster v. Psychemedics Corp., 2011 WL 2520157, at *4 (Tenn. Ct. App. June 24, 2011) (holding that a laboratory conducting random drug testing for an employer owes a duty of care to the employee being tested); Saulsberry v. Lab. Corp. of Am., 2001 WL 912824, at *5 (Tenn. Ct. App. Aug. 6, 2001) (indicating that a laboratory conducting a drug screen on an employee must use reasonable care to provide correct results).

4

Accordingly, Quest's Motion to Dismiss will be granted insofar as the Complaint can be read as asserting a negligent supervision/training claim, but denied insofar as it is read as a simple negligence claim.

In allowing Allen's negligence claim to go forward, the Court has considered and rejects Quest's assertion that "[a] contemporaneous negative urine drug test or a subsequent hair drug test is no evidence that Quest Diagnostic's cocaine test result is not scientifically reliable." (Doc. No. 10 at 5). This entire argument is undercut because Quest refers to Allen's allegations as "evidence," and that each of the cases it cites were either decided in the context of a Motion for Summary Judgment, Pride v. Lab. Corp. of Am., 376 F. App'x 925, 927 (11th Cir. 2010) and Phillips v. Quality Terminal Servs., LLC, 855 F. Supp. 2d 764, 787 (N.D. Ill. 2012), or after discovery and a hearing before an Administrative Law Judge ("ALJ"), Meza v. Dep't of Homeland Sec., 275 F. App'x 987, 990 (Fed. Cir. 2008). Moreover, each of these cases is factually distinguishable and/or not as broad as Quest suggests.

Both Pride and Phillips involved retesting more than a month after the initial test, whereas in this case Allen alleges that his hair was retested ten days after the first sample was taken, and only two days after he learned of the results. Further, "Pride presented no evidence in support of his negligence claim, and . . . it was based on mere speculation," 376 Fed. App'x at 928, while Phillips had "not presented any evidence that a subsequent negative drug test, especially one performed on a hair sample taken significantly later, in any way indicates that a prior positive test was incorrect," 855 F. Supp. 2d at 787. What evidence Allen has or can muster remains to be seen.

Meza involved an appeal to the Merit System Protection Board and competing expert testimony regarding the validity of subsequent urine and hair tests. The ALJ made a credibility

5

determination in favor the agency's expert, which was "virtually unreviewable" on appeal." 275 Fed. App'x at 992. Here, the Court has no way of knowing what an expert might testify, whether credibly or not.[1]

**B. Defamation**

"To establish a *prima facie* case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571-72 (Tenn. 1999) (citing RESTATEMENT (SECOND) OF TORTS § 580 B (1977)). "'Publication is a term of art meaning the communication of defamatory matter to a third person.'" Id. at 572 (quoting Quality Auto Parts Co. v. Bluff City Buick Co., 876 S.W.2d 818, 821 (Tenn.1994)).

Quest moves to dismiss Allen's defamation claim on the grounds that, even if there was a publication, it is entitled to qualified privilege because it reported the result of the drug screen during the normal course of its dealing with Nissan. Such a privilege serves as a defense and "'extends to all communications made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty.'" Al-Hendy v. Meharry Med. Coll., 2014 WL 3853839, at *18 (M.D. Tenn. Aug. 6, 2014) (quoting Maynard v. Vanderbilt Univ., 1993 WL 156156, at *8 (Tenn. Ct. App. May 14, 1993)).

---

[1] In a footnote, Quest also quotes Clinical Drug Testing in Primary Care, at p. 47, https://store.samhsa.gov/shin/content/SMA12-4668/SMA12-4668.pdf for the proposition that "the U.S. Department of Health and Human Services has specifically recognized that if 'a second specimen using the same or a different matrix is negative, it does not refute the accuracy of the first test." Leaving aside that no context is provided for this statement, the same article indicates that "false-positive results are possible with screening (initial) tests," that "[c]onfirmatory tests are frequently performed for specimens with positive drug screening results," and that "[i]nterpretation of positive tests can sometimes be complex." Id. All of this, of course, is well beyond that which is legitimately considered on a Motion to Dismiss.

6

This has long been the rule in Tennessee and was "announced [as] necessary in order that full and unrestricted communication concerning a matter in which the parties have an interest or a duty may be had" and "is grounded upon public policy as well as reason." S. Ice Co. v. Black, 189 S.W. 861, 863 (1916). "'When a statement is qualifiedly or conditionally privileged it is not actionable, even though defamatory, absent actual or express malice.'" Al-Hendy, 2014 WL 3853839, at *18 (quoting Parks v. Nelson, 2002 WL 523458, at *5 (Tenn. Ct. App. April 9, 2002)).

In response to Quest's arguments, Allen cites Sullivan for the elements of a defamation claim, asserts that he has sufficiently alleged the same, and argues:

> Defendant relies on a qualified privilege defense, but that defense is fact-determinative and the parties have conducted no discovery in this case. The qualified privilege defense is dependent of whether the defendant acted in good faith and communicated only with persons with whom defendant had an interest or duty. Defendant's qualified privilege defense may or may not be dispositive of plaintiff's defamation claim, but discovery is necessary to determine the factual basis for the defense. For this reason, defendant's motion to dismiss plaintiff's defamation claim should be denied as premature.

(Doc. No. 12 at 3). No authority is cited for this proposition.

It may be, as Allen seems to suggest, that whether a qualified privilege has been relinquished because the publication is made improperly or with malice presents a factual question. See Davis v. Wendy's Int'l, Inc., 187 F.3d 635 (6th Cir. 1999) (brackets in original) (stating in *dicta* that "[t]he determination of whether [a qualified] privilege [to publish defamatory matter] has been abused is a question of fact"). However, whether the privilege attaches in the first instance is a question of law for the Court. ADT Servs. AG v. Brady, 2011 WL 13092411, at *3 (W.D. Tenn. Jan. 4, 2011); Smith v. Reed, 944 S.W.2d 623, 625 (Tenn. Ct. App. 1996).

"A conditional privilege is recognized where the interest which the defendant is seeking to vindicate or further is regarded as sufficiently important to justify some latitude for making

7

mistakes." Pate v. Serv. Merch. Co., 959 S.W.2d 569, 575-76 (Tenn. Ct. App. 1996). As Quest points out, it has been repeatedly found to exist in the context of reporting the results of employment drug screening tests. See e.g., Ivy V.. Damon Clinical Lab, 1984 Tenn. App. LEXIS 3083, at *5 (Tenn Ct. App. August 29, 1984) (holding that, under Tennessee law, drug testing lab was entitled to conditional privilege on bus driver's claim of slander and libel); Brownlow v. Lab Corp. of Am., 2001 U.S. App. LEXIS 30480, at *2 (5th Cir. May 14, 2001) (stating that, under Texas law, "a libelous test report is protected by a qualified privilege"); Chapman v. Labone, 460 F. Supp. 2d 989, 1004 (S.D. Iowa 2006) (finding that drug testing company that supplied results to employer was entitled to qualified privilege under Iowa law); Frank v. Delta Airlines, Inc., 2001 U.S. Dist. LEXIS 11341, at *6 (N.D. Tex. Aug. 2, 2001) (applying Texas law and stating that "[r]egardless of consent, release of the results of a drug test to the employer is protected by qualified privilege"); Hall v. United Labs, Inc., 31 F. Supp. 2d 1039, 1044 (N.D. Ohio 1998) (stating that, under Ohio law, laboratory "had a qualified privilege to communicate the positive results of [plaintiff's] drug test to [his employer]").

Here, Allen's own allegations and the inference to be derived therefrom suggest the applicability of a qualified privilege on behalf of Quest. The Complaint indicates that Nissan ordered the drug testing, that Quest tested a hair sample at Nissan's request and reported it to be positive for cocaine, and that Nissan had an interest in receiving the results to determine whether one of its tow operators had used unlawful substances.

"When a statement has been found to be conditionally privileged, the only way to succeed in a defamation claim is to prove actual or express malice." Bone v. CSX Intermodal, Inc., 2001 WL 1906279, at *3 (W.D. Tenn. Oct. 11, 2001) (citing Pate, 959 S.W.2d at 575). While the court

8

in Bone went on to state that a plaintiff must "plead facts in his complaint that would support an allegation of actual or express malice on the part of [defendant]," id., this Court elects not to follow that approach.

A conditional or qualified privilege is a defense to a defamation case under Tennessee law. Jones v. State, 426 S.W.3d 50, 53 (Tenn. 2013); Simpson Strong-Tie Co., Inc. v. Stewart, Estes & Donnell, 232 S.W.3d 18, 22 (Tenn. 2007). However, "[i]n diversity cases, including those removed from state court, the federal pleading standards apply," Armstrong v. Shirvell, 596 Fed. App'x 433, 444 (6th Cir. 2015) (collecting authority), and "[a] complaint need not anticipate every defense and accordingly need not plead every response to a potential defense," Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis, 361 F.3d 898, 902 (6th Cir. 2004) (citing Poe v. Haydon, 853 F.2d 418, 424 (6th Cir.1988)). Furthermore, to overcome qualified privilege in a defamation case, a plaintiff must show actual malice on behalf of a defendant, which consists of facts that a plaintiff would not normally be privy to prior to discovery. Accordingly, the Court will not dismiss Allen's defamation claim at this time.

**C. Punitive Damages**

Quest argues that "Allen's claim for punitive damages fails because punitive damages may only be awarded if Allen proves by clear and convincing evidence that Quest Diagnostics acted either 'maliciously, intentionally, fraudulently or recklessly,'" and that he "fails to allege a factual basis" for a claim that Quest acted with such intent "when it reported the results of its forensic laboratory drug testing . . . to Nissan." (Doc. No. 10 at 9-10). In response, Allen merely cites Myers v. Pickering Firm, 959 S.W.2d 152 (Tenn. Ct. App. 1997) for the proposition that "punitive damages are properly awardable under plaintiff's claim for defamation." (Doc. No. 12 at 3).

9

Given what this Court has already observed, merely to state Quest's argument is to expose its fallacy. The time for proving by clear and convincing evidence that Quest acted with the requisite ill intent comes later, and Quest's actual intent can only be discerned through discovery. Allen may have a tough time establishing actual malice for purposes of both his defamation claim and his request for punitive damages, but his task at the pleading state is simply "to allege enough fact to make it plausible that [Quest] bears legal liability," Agema v. City of Allegan, 826 F.3d 326, 331 (6th Cir. 2016), so as to "unlock the doors of discovery." Iqbal, 556 U.S. at 678. The Court finds that he has done so.

### III. Conclusion

Based on the foregoing, Quest's Motion to Dismiss will be granted to the extent that it seeks dismissal of any negligent supervision claim. In all other respects, the Motion will be denied.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE